**CAPE MED. TRANSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.**

[162 N.C. App. 14 (2004)]

CAPE MEDICAL TRANSPORT, INC., Petitioner v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, Respondent

No. COA02-1742

(Filed 6 January 2004)

**1. Administrative Law— judicial review—de novo standard of review—not stated**

The failure of the trial court to state its standard of review when reviewing an agency's revocation of an ambulance license was not error. N.C.G.S. § 150B-51(c) provides only one standard of review (de novo) and does not require that the standard of review be stated by the trial court.

**2. Administrative Law— judicial review—new findings**

A trial court is permitted to make its own findings of fact when reviewing an agency decision, even though the agency's findings were not objected to. Under N.C.G.S. § 150B-51(c), a trial court reviewing an agency decision shall make findings and conclusions and shall not be bound by the agency's final decision.

**3. Administrative Law— judicial review—additional findings—supported by evidence—conclusion that agency decision was arbitrary—supported by findings**

There was substantial evidence supporting the additional findings made by a trial court when reviewing an agency revocation of an ambulance license. The findings supported the conclusion that the agency's decision to revoke the license failed to give appropriate reasoning for not adopting the decision of the administrative law judge and was arbitrary and capricious. N..C.G.S. §§ 150B-51(b)(6) and 150B-36(b1).

Appeal by respondent from order filed 10 October 2002 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 17 September 2003.

*Culbreth Law Firm, by Stephen E. Culbreth, for petitioner-appellee.*

*Attorney General Roy Cooper, by Assistant Attorney General Melissa L. Trippe, for respondent-appellant.*

CAPE MED. TRANSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[162 N.C. App. 14 (2004)]

BRYANT, Judge.

The North Carolina Department of Health and Human Services (the Department) appeals an order filed 10 October 2002 that suspended the ambulance provider license of Cape Medical Transport, Inc. (Cape Medical) in New Hanover County, North Carolina and stayed the revocation of Cape Medical's license in Brunswick County, North Carolina.

On 2 July 2001, Cape Medical filed a "Petition for a Contested Case Hearing" in the Office of Administrative Hearings to appeal the Department's revocation of Cape Medical's ambulance provider license. Initially, this case was heard by an Administrative Law Judge (ALJ). In the recommended decision issued on 31 December 2001, the ALJ made the following findings of fact:

1. The [Department] is charged with ensuring that the public's health and safety is met by establishing minimum standards and promulgating rules according to the General Statutes. . . .

2. [Cape Medical] provides non-emergency ambulance transport to patients. . . . in both New Hanover County and Brunswick County. . . .

3. Keith Harris is a regional manager of the [Department] . . . . [He] has conducted approximately 20 to 25 investigations and has completed both basic and advanced level investigation courses. . . .

4. On November 14, 2000, Mr. Harris . . . [learned] Ms. Rachel Odom had . . . report[ed] a complaint regarding [Cape Medical]. . . .

5. . . . Ms. Odom was employed with [Cape Medical] as an EMT [(emergency medical technician)] from approximately July 2000 until approximately early December 2000. . . .

6. Ms. Odom told Mr. Harris that on . . . November 14, 2000, while she was working for [Cape Medical], she transported by herself three dialysis patients by ambulance to Southeastern Dialysis Center in Wilmington. . . . Ms. Odom stated she conducted the transport without any other personnel on board because she was instructed to do so by Mr. Doug Kirk. . . . Mr. Kirk is employed by [Cape Medical] as a manager. . . .

CAPE MED. TRANSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[162 N.C. App. 14 (2004)]

7. . . . Ms. Odom completed a written statement and sent it to Mr. Harris . . . .

. . . .

9. The [Department] interprets N.C. Gen. Stat. § 131E-158 to require at least two certified personnel to be aboard an ambulance when patients are being transported . . . .

10. Previously, on September 18, 2000, as the result of having learned that [Cape Medical] possibly transported a patient by ambulance without sufficient personnel aboard, Mr. Harris went to [Cape Medical's] office and met with Mr. Kirk. . . . During that meeting, Mr. Harris informed Mr. Kirk that N.C. Gen. Stat. § 131E-158 states the minimum staffing requirements for ambulance transportation. . . .

11. Prior to September 18, 2000, Ms. Pat Well, a regional manager for the [Department], and Jeremy Banks, former employee of the [Department], met with Mr. Kirk and informed him of the minimum staffing requirements for ambulance transportation. . . .

. . . .

13. On . . . November 18, 2000, Mr. Harris returned to Southeastern Dialysis Center. . . . Mr. Harris observed Mr. Kirk arrive driving one of [Cape Medical's] ambulances. Mr. Harris observed Mr. Kirk get out of the driver's door and go around to the passenger side and assist a lady out of the ambulance. Mr. Harris observed Mr. Kirk help two other people out of the same side door. Mr. Kirk then got in the driver's side of the ambulance and drove off. . . . Mr. Harris saw no one else present in the ambulance. Mr. Harris could see in both the driver and passenger door and he saw both doors open. . . . Nothing was obstructing Mr. Harris' view. . . . Mr. Harris could not see into the back of the ambulance. . . .

14. On November 22, 2000, Mr. Harris . . . went to [Cape Medical's] office. . . . Mr. Harris requested to see [Cape Medical's] ACRs from October 1, 2000, through November 20, 2000. . . . ACR stands for ambulance call report. ACRs contain all patient information and medical care. . . . With regard to ACRs for November 18, 2000, Mr. Kirk did not produce any ACRs . . . , and stated he did not complete ACRs when he did a free transport. Mr. Kirk admitted during the meeting and later in his testimony at hearing,

CAPE MED. TRANSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[162 N.C. App. 14 (2004)]

that he, without anyone else on board the ambulance, gave a courtesy transport to a lady on November 18, 2000. . . . In response to [the Department's] First Set of Interrogatories and Request for Production of Documents, Mr. Kirk stated the ACRs for November 18 had been misplaced. . . .

15. During the November 22, 2000 meeting at [Cape Medical's] office, Mr. Harris informed Mr. Kirk of the minimum staffing requirements for transporting patients by ambulance. . . .

16. Also, during the November 22 meeting, Mr. Harris asked Mr. Kirk if [Cape Medical] had a franchise agreement in New Hanover County. Mr. Kirk said no. . . . [Cape Medical] was on notice from the County that it was required to have a franchise agreement in order to do business in New Hanover County. . . .

17. The [Department's] long-standing interpretation of 10 NCAC 3D.1501(a)(4) is that a provider must have a franchise agreement in each county where the provider makes pick-ups and deliveries. . . .

. . . .

19. Mr. Harris completed a written report of his entire complaint investigation. . . .

. . . .

28. Normally, the [Department] communicates with the provider about any alleged statutory and regulatory violations and the provider corrects any violations and revocation is not necessary. [Cape Medical] continued to violate the minimum staffing requirements after several communications with the [Department] and continued to operate in New Hanover County after being informed by the County that it needed a franchise. . . .

29. Mr. Pratt[, the section chief of the Department,] testified that the [Department] has received reports since March 5, 2001[] that [Cape Medical] has transported patients without sufficient staffing. . . .

The ALJ concluded Cape Medical violated N.C. Gen. Stat. § 131E-158 "on November 14, 2000 . . . , when it transported by ambulance three patients with only one certified personnel on board the ambulance, and . . . on November 18, 2000, when it transported by

18        IN THE COURT OF APPEALS

CAPE MED. TRANSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[162 N.C. App. 14 (2004)]

ambulance a patient with only one certified personnel on board."
The ALJ also concluded Cape Medical violated the Department's
former rule 10 NCAC 3D.1501(a)(4)[1] for operating in New Hanover
County without a franchise and presenting no written evidence of
the county's intent to issue it a franchise. The ALJ suspended Cape
Medical's operations in New Hanover County until Cape Medical
obtained a franchise in that county and stayed revocation of
Cape Medical's license in Brunswick County for five years on the
condition that Cape Medical not violate the staffing requirements in
the future.

In the final decision issued on 6 March 2002, the Department con-
curred with the ALJ's findings of fact and also found Cape Medical
had committed the violations stated in the recommended decision.
Nevertheless, the Department rejected the ALJ's ruling and revoked
Cape Medical's license. According to the Department, the ALJ's deci-
sion "failed to give due regard to the demonstrated knowledge and
expertise of the Agency with respect to facts and inferences within
the specialized knowledge of the Agency" and was "clearly contrary
to the preponderance of the admissible evidence in the record."

On 14 March 2002, Cape Medical petitioned for judicial review by
the trial court. Cape Medical did not object to the Department's find-
ings of fact. The trial court made many findings similar to those of the
Department. Furthermore, the trial court made the following addi-
tional findings:

8. Mr. Kirk testified that he was the second certified EMT
   onboard the ambulance [on] the transports that Ms. Odom tes-
   tified had only one person. . . . He further testified that Ms.
   Odom never at any time transported patients for [Cape
   Medical] by herself. . . .

9. Mr. Kirk testified that Ms. Odom is a disgruntled former
   employee who quit when she felt her pay was insufficient and
   she had a history of leaving jobs when she felt she was not
   being adequately compensated. . . .

. . . .

13. Joshua Blanks, an Emergency Medical Technician for [Cape
    Medical], rode in the back of the ambulance during the
    November 18, 2000 transport. . . . Mr. Blanks was not feeling

1. 10 NCAC 3D.1501 was repealed effective 1 January 2002. 10 NCAC 3D.1501
(Jun. 2002).

CAPE MED. TRANSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[162 N.C. App. 14 (2004)]

well and therefore remained in the back of the ambulance while Mr. Kirk assisted the patients into the Center. . . .

. . . .

19. Other than the two (2) incidents . . . [on 14 and 18 November 2000], there was no substantiation of any reports of patients without the required number of staff because Drexdal R. Pratt . . . testified that his office did not investigate any additional allegations. . . .

20. . . . [T]he [Department] is aware of other North Carolina ambulance providers that have been investigated for understaffed transportation of patients. However, the agency has never revoked any other provider's license for any similar transgressions. . . .

. . . .

24. . . . [T]he [Department] has never in its history enforced a county franchise agreement. . . .

The trial court concluded:

5. That the "Final Decision" for the rejection of the recommended decision of the [ALJ] is flawed in that the [Department] has failed to demonstrate a knowledge and expertise within its specialized knowledge which would permit it to reject the recommendations of the [ALJ] and it has no guidelines for the revocation of a provider's license.

6. That the [Department] admits that there have been other providers who have made similar violations, but that their licenses have not been revoked by the [Department].

7. That the action of the [Department] in rejecting the [ALJ] was arbitrary and capricious.

8. That the [Department] failed to give appropriate reasoning for not adopting the decision of the [ALJ].

As a result, the trial court rejected the Department's final decision and reinstated the ALJ's decision to suspend Cape Medical's license in New Hanover County and stay the revocation of the license in Brunswick County.

**CAPE MED. TRANSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.**

[162 N.C. App. 14 (2004)]

The issues are whether the trial court erred by: (I) failing to state the standard of review in its order; (II) making additional findings of fact; and (III) rejecting the Department's final decision.

I

**[1]** The Department first argues the trial court erred in failing to state the standard applied to its review of the Department's final decision. Specifically, the Department argues the trial court's "failure to do so[] makes it simply impossible for this Court to review the trial court's order and determine, *what*, if any, standard of review was applied or whether an error was made in regard to the *way* in which a standard of review was applied." We disagree.

N.C. Gen. Stat. § 150B-51(c) provides:

· In reviewing a final decision in a contested case in which an administrative law judge made a decision, in accordance with G.S. 150B-34(a), and the agency does not adopt the administrative law judge's decision, the court shall review the official record, *de novo*, and shall make findings of fact and conclusions of law. In reviewing the case, the court shall not give deference to any prior decision made in the case and shall not be bound by the findings of fact or the conclusions of law contained in the agency's final decision. The court shall determine whether the petitioner is entitled to the relief sought in the petition, based upon its review of the official record. The court reviewing a final decision under this subsection may adopt the administrative law judge's decision; may adopt, reverse, or modify the agency's decision; may remand the case to the agency for further explanations under G.S. 150B-36(b1), 150B-36(b2), or 150B-36(b3), or reverse or modify the final decision for the agency's failure to provide the explanations; and may take any other action allowed by law.

N.C.G.S. § 150B-51(c) (2001) (emphasis added). Section 150B-51(c) provides only one standard of review, *de novo*, and does not require the trial court to state the standard of review. Therefore, the trial court did not err in failing to state the standard of review in its order.

II

The Department next contends the trial court erred in making additional findings of fact. The Department argues: (1) the findings in its final decision were binding on the superior court because Cape

CAPE MED. TRANSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[162 N.C. App. 14 (2004)]

Medical did not raise any exception to them and (2) alternatively, the trial court's additional findings were not supported by substantial evidence. We disagree.

1

**[2]** Section 150B-51(c) dictates the standard of judicial review in cases in which the agency does not adopt the ALJ's decision. N.C.G.S. § 150B-51(c). Added to the North Carolina Administrative Procedures Act in 2000, section 150B-51(c) is applicable to contested cases commenced on or after 1 January 2001. N.C.G.S. § 150B-51(c). In the instant case, the petition for contested case hearing was filed on 2 July 2001, after section 150B-51(c) became effective. Therefore, judicial review of the instant case is dictated by section 150B-51(c). Because our Courts have not yet had the opportunity to address this issue, we are presented with a matter of first impression.

As provided in section 150B-51(c), in its *de novo* review of an agency decision declining to adopt the ALJ's decision, the trial court "*shall make findings of fact and conclusions of law. . . . and shall not be bound by the findings of fact . . . in the agency's final decision.*" N.C.G.S. § 150B-51(c) (emphasis added). The plain language of the section permits the trial court to review the official record and make its own findings of fact and conclusions of law, without giving deference to any prior agency or ALJ decision. "*De novo* review requires a court to consider the question anew, as if the agency has not addressed it." *Blalock v. N.C. Dep't of Health and Human Servs.*, 143 N.C. App. 470, 475-76, 546 S.E.2d 177, 182 (2001); *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). "Presumably, [section 150B-51(c)] makes clear that unlike the *de novo* review of questions of law under the traditional standard of review, in which the court might in some cases give 'some deference' even to questions of law, such deference is not to be given to any aspect of any prior decision in the case." Charles E. Daye, *Powers of Administrative Law Judges, Agencies, and Courts: An Analytical and Empirical Assessment*, 79 N.C.L. Rev. 1571, 1609 (2001) (emphasis added).

The legislative intent behind section 150B-51(c) is to increase the judicial scope of review in cases in which an agency rejects the ALJ's decision. *Id.*; Brad Miller, *What. Were We Thinking?: Legislative Intent and the 2000 Amendments to the North Carolina APA*, 79 N.C.L. Rev. 1657, 1661 (2001) [hereinafter *Legislative Intent*]. Before the enactment of section 150B-51(c), "the standard of review for find-

CAPE MED. TRANSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[162 N.C. App. 14 (2004)]

ings of fact [in the final agency decision] was very deferential [to the agency]." Miller, *Legislative Intent*, 79 N.C.L. Rev. at 1658; *see also* Julian Mann, III, *Administrative Justice: No Longer Just a Recommendation*, 79 N.C.L. Rev. 1639, 1655 (2001) (section 150B-51(c) "is a substantial departure from previous statutory law").

We acknowledge our Courts have previously held that an agency's findings of fact if not objected to constituted the whole record and were binding on appeal. *See Town of Wallace v. Dept. of Environment*, 160 N.C. App. 49, 54, 584 S.E.2d 809, 814 (2003); *Dixie Lumber Co. of Cherryville v. N.C. Dep't of Env't, Health & Nat. Res.*, 150 N.C. App. 144, 148, 563 S.E.2d 212, 213-14 (2002); *Wiggins v. N.C. Dept. of Human Resources*, 105 N.C. App. 302, 306, 413 S.E.2d 3, 5 (1992). However, these cases were decided before section 150B-51(c) came into effect and are thus not applicable here. *See e.g., Town of Wallace*, 160 N.C. App. at 54 n.1, 584 S.E.2d at 813 n.1 (noting the standard of review articulated by section 150B-51(c) did not apply to the case before the Court because the contested case petition had been filed on 13 March 2000, before section 150B-51(c) came into effect). Therefore, consistent with section 150B-51(c), the trial court is permitted to make its own findings of fact, even though neither party objected to those findings.

2

[3] We now address whether the trial court's additional findings were supported by substantial evidence. "In cases reviewed under [section] 150B-51(c), the court's findings of fact shall be upheld if supported by substantial evidence." N.C.G.S. § 150B-52 (2001). "Substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " even if contradictory evidence may exist. *Avant v. Sandhills Ctr. for Mental Health*, 132 N.C. App. 542, 546-47, 513 S.E.2d 79, 83 (1999) (citation omitted); *Dockery v. N.C. Dept. of Human Resources*, 120 N.C. App. 827, 830, 463 S.E.2d 580, 583 (1995). The "substantial evidence" test is a deferential standard of review. *See Avant*, 132 N.C. App. at 546-47, 513 S.E.2d at 83; *Dockery*, 120 N.C. App. at 830, 463 S.E.2d at 583 (1995); Miller, *Legislative Intent*, 79 N.C.L. Rev. at 1658.

The trial court's additional findings at issue here are findings of fact 8, 9, 13, 19, 20, and 24. These additional findings are supported by substantial evidence, as they were consistent with the testimony of Kirk, Blanks, and Pratt at the hearing before the ALJ. *See State ex rel. Utilities Comm. v. Public Staff*, 323 N.C. 481, 492-93, 374 S.E.2d 361,

CAPE MED. TRANSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[162 N.C. App. 14 (2004)]

367 (1988) (testimony of two witnesses, despite conflicting testimony of other witnesses, constitutes substantial evidence in support of the findings of fact). Because the trial court properly made the additional findings, the Department's assignment of error is overruled.

### III

Lastly, the Department argues the trial court erred in concluding that the Department's final decision to revoke Cape Medical's license failed to give appropriate reasoning for not adopting the decision of the ALJ and was arbitrary and capricious. We disagree.

> The court reviewing a final decision . . . may adopt the administrative law judge's decision; may adopt, reverse, or modify the agency's decision; may remand the case to the agency for further explanations under G.S. 150B-36(b1), 150B-36(b2), or 150B-36(b3), or reverse or modify the final decision for the agency's failure to provide the explanations; and may take any other action allowed by law.

N.C.G.S. § 150B-51(c). Other than as provided in section 150B-51(c), the trial court "may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if . . . the agency's findings, inferences, conclusions, or decisions are . . . arbitrary [and] capricious." N.C.G.S. § 150B-51(b)(6) (2001).

For each ALJ finding rejected by the agency, the agency must set forth "separately and in detail" the reason for and the evidence in the record it relied upon for rejecting the finding. N.C.G.S. § 150B-36(b1) (2001). An agency's decision is arbitrary and capricious if it lacks "fair and careful consideration . . . [or] fail[s] to indicate 'any course of reasoning and exercise of judgment.' " *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 420, 269 S.E.2d 547, 573 (1980) (citation omitted) (holding order requiring insurance organization to submit audited data was arbitrary and capricious where Insurance Commission failed to determine availability of data and provide adequate guidelines for compliance with order).

N.C. Gen. Stat. § 131E-158(a) requires an "ambulance when transporting a patient . . . [to] be occupied . . . by . . . [a]t least one emergency medical technician . . . [and] [o]ne medical responder." N.C.G.S. § 131E-158(a) (2001). Under the Department's former rule 10 NCAC 3D.1501(a)(4), applicable to this action, a provider of ambulance services must have a franchise to operate or present written evidence of a county's intent to issue a franchise if the county to

CAPE MED. TRANSP., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[162 N.C. App. 14 (2004)]

be served had a franchise ordinance in effect. Furthermore, 10 NCAC 3D.1401 provides:

> (i) the Department may revoke or suspend an Ambulance Provider License whenever:
>
> > (1) the Department finds that:
> >
> > > (A) the licensee has substantially failed to comply with the provisions of G.S. 131E, Article 7 and the rules adopted under that article; and
> > >
> > > (B) it is not reasonably probable that the licensee can remedy the licensure deficiencies within a reasonable length of time.

10 NCAC 3D.1401(i)(1) (Jun. 2002).

As stated previously, the trial court made additional findings that there was no substantiation of any additional violations other than the 14 and 18 November 2000 incidents; and that other providers had been investigated for similar understaffing violations, but their licenses were never revoked. The trial court then concluded the Department had no guidelines for revocation of providers' licenses and the agency's decision in not adopting the ALJ decision failed to provide appropriate reasoning and was arbitrary and capricious. In our review of the record, we hold all of the trial court's additional findings to be based on substantial evidence, and that those findings support the trial court's conclusions that the Department's final decision was arbitrary and capricious and failed to give appropriate reasoning for its rejection of the ALJ decision. Accordingly, the trial court properly rejected the Department's final decision and reinstated the ALJ's decision.

Affirmed.

Judges MARTIN and GEER concur.