ALICE BINS RAINEY, MICHELE R. ROTOSKY AND MADELINE DAVIS TUCKER, PETITIONERS-APPELLANTS v. NORTH CAROLINA DEPARTMENT OF PUBLIC INSTRUCTION AND STATE BOARD OF EDUCATION, RESPONDENTS-APPELLEES

No. COA05-1609

(Filed 20 February 2007)

**1. Appeal and Error— improper application of de novo standard of review—remand not required**

Although the trial court erred by its application of the de novo standard of review in a contested case hearing when it gave deference to the agency's expertise and consistency in applying various statutes, a trial court's use of an incorrect standard of review does not automatically require remand. In the instant case, the trial court's erroneous application of the de novo standard of review in no way interfered with the Court of Appeals' ability to assess how that standard should have been applied to the particular facts of this case, and thus, the merits of petitioner's arguments are reviewable.

**2. Schools and Education— national board teaching certification—eligibility**

The trial court did not err by concluding that petitioner's eligibility for the North Carolina National Board for Professional Teaching Standards program should be governed by N.C.G.S. § 115C-296.2 even though petitioner contends it had not yet taken effect when she completed the certification process, because: (1) N.C.G.S. § 115C-296.2 became effective on 1 July 2000; (2) petitioner's letter to the State Board dated 27 June 2001 stated that she was notified that she had achieved National Board Certification on 30 November 2000; and (3) the date when petitioner finished submitting her application materials is not the crucial date, but instead the date when the National Board deemed petitioner certified controls.

**3. Schools and Education— national board teaching certification—salary increase**

The trial court erred by withholding the twelve percent salary increase from petitioner, a career development education teaching coordinator, under North Carolina's National Board for Professional Teaching Standards program, because: (1) the goal of the incentive program is to encourage excellence and retain excellent teachers in the teaching profession; (2) N.C.G.S.

§ 115C-296.2(b) makes no mention of classroom teachers; (3) although respondent contends the only NBPTS certification areas the General Assembly intended to include in the "other than direct classroom instruction" prong were media and school counseling, this limit is not reflected anywhere in the language of N.C.G.S. § 115C-296.2(b)(2)d; and (4) the National Board does not classify its certification areas as "classroom" areas of certification and "other than classroom instruction" areas of certification.

Appeal by Petitioner Madeline Davis Tucker from order and judgment dated 7 September 2005 by Judge Howard E. Manning, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 22 January 2007.

*Poyner & Spruill LLP, by Thomas R. West and Pamela A. Scott, for Petitioners-Appellants Madeline Davis Tucker.*

*Attorney General Roy Cooper, by Assistant Attorney General Laura E. Crumpler, for Respondents-Appellees.*

ELMORE, Judge.

At issue in this case is whether Madeline Davis Tucker (petitioner) qualifies for a twelve percent salary increase under North Carolina's National Board for Professional Teaching Standards program. We find that petitioner meets the requirements set out in N.C. Gen. Stat. § 115C-296.2(b) and therefore, we reverse the trial court's judgment.

The National Board for Professional Teaching Standards (the National Board or NBPTS) is a nonprofit organization that grants certification to teachers across the country. Certification by the National Board is entirely voluntary for teachers, unlike mandatory state certification by our State Board of Education (State Board). At the time of the administrative hearing in this matter, the National Board offered certification in the following areas: Generalist, Art, Career and Technical Education, English as a New Language, English Language Arts, Exceptional Needs, Library Media, Mathematics, Music, Physical Education, School Counseling, Science, Social Studies-History, and World Languages Other than English. The National Board offered certification in Career and Technical Education for the first time in 1999.

Our General Assembly, with the encouragement of then Governor James B. Hunt, Jr., initiated a program designed to give incentives to teachers who gain National Board certification. Originally, the benefits afforded NBPTS certified teachers were established by session law, but the provisions were ultimately codified into N.C. Gen. Stat. § 115C-296.2, effective 1 July 2000. As codified, the statute mandates that the State pay the participation fee, provide paid leave for eligible teachers who pursue certification, and "[pay] a significant salary differential to teachers who attain national certification from [the National Board.]" N.C. Gen. Stat. § 115C-296.2(a) (2005).

Petitioner is employed by Onslow County as a "Career Development Education Teaching Coordinator." She is licensed by the North Carolina Department of Public Instruction (respondent) as a mentor, career development coordinator, business education teacher grades 9 through 12, and career exploration teacher grades 6 through 9. In her role, petitioner "provides support to vocational teachers, students and other vocational personnel within the local school system" and "helps teachers, students, and other vocational personnel use [a vocational tracking system] to improve the instructional process, document student learning, and improve vocational outcomes[.]" Petitioner's responsibilities include working with teachers to prepare learning plans and to implement testing and documentation, "provid[ing] information/guidance to students for planning and updating career development plans," and "coordinat[ing] efforts in helping students gain skills . . . related to employment." Petitioner is also responsible for providing "career planning activities . . . for students" and "support and assistance for vocational programs to all teachers and students[.]" Finally, petitioner "serves to enhance the education process through providing services to students, teacher, principals, and others involved in the instructional process."

Petitioner attended a seminar in October 1999 sponsored by respondent. According to the organizer of the seminar, Ken Smith (Smith), an employee of respondent, the purpose of the seminar was to provide information about the certification process and the advantages of becoming certified by the National Board. According to petitioner, the presenters at the seminar, Karen Garr, Office of the Governor; Tom Blanford, Executive Director of NC Teaching Standards Commission; and Angela Farthing, Executive Director of North Carolina Association of Educators, assured petitioner that she met the criteria to qualify for the salary increase if she were to successfully achieve NBPTS certification. Petitioner relayed this

information to Smith, who encouraged petitioner to pursue NBPTS certification. According to petitioner, the presenters reiterated that as long as petitioner's salary code began with a "1," petitioner had three years of teaching experience in North Carolina, and petitioner was paid on the teacher salary scale, then Petitioner would be eligible for the NBPTS salary increase upon attaining NBPTS certification.

Petitioner began the NBPTS application process on 11 November 1999 by completing a form titled "North Carolina Department of Public Instruction National Board for Professional Teaching Standards Intent to Apply 1999-2000." The form included a promissory note in which petitioner promised to repay the application fee of $2,000.00 if she did not complete the NBPTS certification process on or before 31 August 2000, or if she did not teach in a North Carolina public school for at least one year immediately after completing the process. The form also indicated that "[t]eachers holding National Board Certification will be paid, on an annual basis, a salary appropriate to the certification. (Currently, this is a 12% premium.)" The criteria for funding required applicants to be "state-paid teachers, [who] have taught [three] full years in North Carolina Public Schools . . ., hold a valid, clear, continuing North Carolina teaching license, and [who] have not previously received State funds for participating in the NBPTS assessment."

Petitioner completed her content knowledge examination on 19 June 2000. The National Board notified petitioner on 30 November 2000 that she had achieved NBPTS certification. However, in December, 2000, respondent informed petitioner that she would not receive the NBPTS salary increase. Petitioner, and several other individuals who were also denied the salary increase but who are not parties to this appeal, appealed respondent's decision by filing a petition for a contested case hearing on 27 December 2002.

Petitioner testified at the administrative hearing that although her office is located at the central office, she is paid on the teacher salary schedule and therefore is classified as a teacher. Petitioner indicated that she was not paid as an administrator, and did not receive the bonuses or extra leave days that administrators receive.

Philip Price (Price), respondent's Associate Superintendent for Financial and Business Services, and Gary Jarrett (Jarrett), respondent's Section Chief of School Personnel Support, testified for respondent. The substance of their testimony was that according to the agency's interpretation of North Carolina's NBPTS program,

petitioner was not a "teacher" for purposes of the statute. There-
fore, they testified, she was not eligible for the salary increase
because the "other than classroom instruction" prong was designed
to cover only those certified by the National Board in the areas of
media and school counseling. Jarrett testified that the legislation did
not include a list of particular fields in the "other than classroom
instruction" paragraph in order to avoid having to revise the legisla-
tion each time the National Board added an additional "other than
direct classroom instruction" field to their certification program.
Jarrett also noted that the Salary and Benefits Manual treats central
office administrators differently from teachers and instructional
support personnel.

Administrative Law Judge Melissa Owens Lassiter (the ALJ)
presided over the contested case hearing. The ALJ reversed respond-
ent's decision and ordered that petitioner receive the NBPTS salary
increase from 1 July 2000. The State Board did not adopt the ALJ's
decision and issued a Final Decision, dated 2 September 2004, affirm-
ing respondent's original decision to deny the salary increase.
Petitioner filed a petition for judicial review with the Wake County
Superior Court. The trial court affirmed the State Board's decision in
an order dated 7 September 2005. Petitioner appeals.

I. Standard of Review

**[1]** N.C. Gen. Stat. § 150B-51(c) (2005) governs judicial review in con-
tested case petitions filed after 1 January 2001. The provision was
added to the North Carolina Administrative Procedures Act (APA) in
2000, and provides, in pertinent part:

In reviewing a final decision in a contested case in which an
administrative law judge made a decision, in accordance with
G.S. 150B-34(a), and the agency does not adopt the administrative
law judge's decision, the court shall review the official record, de
novo, and shall make findings of fact and conclusions of law. In
reviewing the case, the court shall not give deference to any prior
decision made in the case and shall not be bound by the findings
of fact or the conclusions of law contained in the agency's final
decision. The court shall determine whether the petitioner is en-
titled to the relief sought in the petition, based upon its review of
the official record.

*Id.* This provision requires the superior court, as the reviewing court,
"to engage in independent 'de novo' fact-finding in all contested cases

commenced on or after 1 January 2001 where the agency fails to adopt the ALJ's initial decision." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 662-63, 599 S.E.2d 888, 897 (2004). The trial court's duty to engage in independent fact-finding is only triggered when the agency rejects the ALJ's decision. *Id.* In *Carroll*, our Supreme Court noted that N.C. Gen. Stat. § 150B-51(c) "does not redefine the 'de novo' standard governing judicial review over questions of law." *Id.* Thus, "under the *de novo* standard of review, the trial court consider[s] the matter anew and freely substitutes its own judgment for the agency's." *Id.* at 660, 599 S.E.2d at 895.

In *Cape Med. Transp., Inc. v. N.C. Dep't of Health & Human Servs.*, 162 N.C. App. 14, 21, 590 S.E.2d 8, 13 (2004), this Court found that "[t]he legislative intent behind section 150B-51(c) [was] to increase the judicial scope of review in cases in which an agency rejects the ALJ's decision." In *Cape Medical*, we also cited one commentator's observation that N.C. Gen. Stat. § 150B-51(c) "makes clear that unlike the *de novo* review of questions of law under the traditional standard of review, in which the court might in some cases give 'some deference' even to questions of law, such deference is not to be given to any aspect of any prior decision in the case." *Id.*

N.C. Gen. Stat. § 150B-52 (2005) governs our Court's review of the trial court's judgment in a case arising from a contested case petition, and provides, in pertinent part:

> A party to a review proceeding in a superior court may appeal to the appellate division from the final judgment of the superior court as provided in G.S. 7A-27. The scope of review to be applied by the appellate court under this section is the same as it is for other civil cases. In cases reviewed under G.S. 150B-51(c), the court's findings of fact shall be upheld if supported by substantial evidence.

Therefore, we must uphold the trial court's findings of fact if they are supported by substantial evidence, but, as in "other civil cases," we review the trial court's conclusions of law *de novo*.

> As to appellate review of a superior court order regarding an agency decision, the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2), deciding whether the court did so properly.

*ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (citations omitted).

In the judgment from which petitioner appeals, the trial court "reviewed the official record *de novo*, and [did] not [give] deference to any prior decision made in the case, except to the extent permitted by law[.]" However, the trial court further stated, "[w]hile this Court need not defer to any prior decision in the case, or give any greater weight to the Agency's application of the law to the facts, the Court may nevertheless give appropriate weight to an Agency's demonstrated expertise and consistency in applying various statutes." Petitioner assigns error to the trial court's application of the standard of review, arguing that the trial court improperly applied the *de novo* standard of review by deferring to respondent's construction of the statute at issue. In response, respondent argues that it was proper for the trial court to "give appropriate weight to the agency's demonstrated expertise and consistency in applying the relevant rules and statutes."

The parties stipulated that the petition for contested case hearing in this matter was filed on 27 December 2002. Thus, the amended provisions of N.C. Gen. Stat. § 150B-51(c) and N.C. Gen. Stat. § 150B-52 apply to this case.

In this case, N.C. Gen. Stat. § 150B-51(c) mandated that the trial court apply *de novo* review, which the court recognized as the proper standard of review in its judgment. Thus, we must determine whether the trial court erred in giving "appropriate weight to an Agency's demonstrated expertise and consistency in applying various statutes" when applying a *de novo* standard of review under N.C. Gen. Stat. § 150B-51(c).

The language of N.C. Gen. Stat. § 150B-51, as amended by the addition of subsection (c), expands the role of the trial court when the decision of the agency and the decision of the ALJ differ. The language added to the APA mandates that in situations where the agency does not adopt the decision of the ALJ, "the court shall review the official record, de novo, and shall make findings of fact and conclusions of law." N.C. Gen. Stat. § 150B-51(c) (2005). In doing so, "the court shall not give deference to any prior decision made in the case and shall not be bound by the findings of fact or the conclusions of law contained in the agency's final decision." *Id.* Deference to the agency is inconsistent with this mandate. We hold that the trial court erred in its application of the standard of review.

However, "a trial court's use of an incorrect standard of review does not automatically require remand." *Vanderburg v. N.C. Dep't of Revenue*, 168 N.C. App. 598, 607, 608 S.E.2d 831, 838 (2005).

> [I]n cases appealed from an administrative tribunal under the APA, it is well settled that the trial court's erroneous application of the standard of review does not automatically necessitate remand, provided the appellate court can reasonably determine from the record whether the petitioner's asserted grounds for challenging the agency's final decision warrant reversal or modification of that decision[.]

*Carroll*, 358 N.C. at 665, 599 S.E.2d at 898. In the present case, because "the trial court's erroneous . . . application of the *de novo* standard of review in no way interferes with our ability to assess how that standard *should have been applied* to the particular facts of this case[,]" we review the merits of petitioner's arguments. *Id.*

## II. Law Governing Petitioner's Eligibility

[2] Petitioner next argues that her eligibility for the North Carolina NBPTS program should be governed by Session Law 1999-237, § 8.7(a) because N.C. Gen. Stat. § 115C-296.2 had not yet taken effect when she completed the certification process. Accordingly, she contends that the trial court erred when it applied N.C. Gen. Stat. § 115C-296.2 to determine her eligibility for NBPTS certification benefits. We disagree.

N.C. Gen. Stat. § 115C-296.2 became effective on 1 July 2000. Prior to its enactment, the General Assembly set aside funds for North Carolina's NBPTS program in its annual appropriations bill. *See*, 1999 N.C. Sess. 1999-237. Session Law 1999-237, § 8.7(a) requires respondent to fund payment of the participation fee and three days of leave for teachers who participate in the NBPTS program who "have completed three years of teaching in North Carolina schools" as defined by the provision, and who "have not previously received State funds for participation in any certification area in the NBPTS program." *Id.* The session law also provides for the repayment of the participation fee if the teacher does not complete the application process or does not teach in a North Carolina public school for at least one year after completing the process. *Id.*

Petitioner maintains that the codified statute does not determine her eligibility because she completed the certification process before the statute became effective. Respondent contends that although

petitioner completed the application and testing process in June, 2000, "the actual award of the certification itself did not occur until the fall of 2000, well after the effective date of the new statute[.]" On this point, we agree with respondent.

Petitioner completed her application on 11 November 1999, and completed her content knowledge test on 19 June 2000. However petitioner's letter to the State Board, dated 27 June 2001, states that she "was notified that [she] had achieved National Board Certification" on 30 November 2000. Accordingly, petitioner was not "certified" by the National Board until November, 2000, after the statute had taken effect. The date when petitioner finished submitting her application materials is not the crucial date. Rather, the date when the National Board deemed petitioner certified controls. Accordingly, we now determine whether petitioner satisfies the statutory requirements of N.C. Gen. Stat. § 115C-296.2.

III. Statutory Interpretation of N.C. Gen. Stat. § 115C-296.2

**[3]** N.C. Gen. Stat. § 115C-296.2 governs North Carolina's incentive program for teachers attaining National Board certification. Subsection (b)(2) defines "teacher" as follows a person who:

(2) a. Either:

1. Is certified to teach in North Carolina; or

2. Holds a certificate or license issued by the State Board of Education that meets the professional license requirement for NBPTS certification;

b. Is a State-paid employee of a North Carolina public school;

c. Is paid on the teacher salary schedule; and

d. Spends at least seventy percent (70%) of his or her work time:

1. In classroom instruction, if the employee is employed as a teacher. Most of the teacher's remaining time shall be spent in one or more of the following: mentoring teachers, doing demonstration lessons for teacher, writing curricula, developing and leading staff development programs for teachers; or

2. In work within the employee's area of certification or licensure, if the employee is employed in an area of NBPTS certification other than direct classroom instruction.

N.C. Gen. Stat. § 115C-296.2 (b)(2) (2005). The statute provides that the State will pay the NBPTS participation fee and provide up to three days of paid leave for teachers participating in the NBPTS program who have (1) taught for three years in North Carolina public schools, and (2) have not previously received NBPTS funds, have repaid those funds to the State, or have received a waiver of payment from the State Board of Education. N.C. Gen. Stat. § 115C-296.2(c) (2005). The teacher must repay the participation fee if the teacher does not complete the NBPTS certification process or does not teach in a North Carolina public school for one year after completing the process, unless the failure results from the death or disability of the teacher. N.C. Gen. Stat. § 115C-296.2(d)-(e) (2005). Finally, the statute gives the State Board the authority to adopt policies and guidelines to implement the program. N.C. Gen. Stat. § 115C-296.2(f) (2005).

"In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished. Legislative purpose is first ascertained from the plain words of the statute." *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). "In ascertaining the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish." *Department of Correction v. Hill*, 313 N.C. 481, 458-86, 329 S.E.2d 377, 379-80 (1985).

Importantly, the NBPTS statute contains a statement of the State's policy in subsection (a):

It is the goal of the State to provide opportunities and incentives for good teachers to become excellent teachers and to retain them in the teaching profession; to attain this goal, the State shall support the efforts of teachers to achieve national certification by providing approved paid leave time for teachers participating in the process, paying the participation fee, and paying a significant salary differential to teachers who attain national certification from the National Board for Professional Teaching Standards[.]

N.C. Gen. Stat. § 115C-296.2(a) (2005). Although respondent maintained throughout its brief that the purpose of the statute was to retain teachers in the classroom, such a goal is not reflected in the statutory language enacted by the General Assembly. Rather, the goal is to encourage excellence and retain excellent teachers in the "teaching profession." This language makes no mention of "classroom teachers."

Further, N.C. Gen. Stat. § 115C-296.2(b)(2)d includes two distinct means of satisfying that part of the definition: the "classroom instruction" prong set forth in N.C. Gen. Stat. § 115C-296.2(b)(2)d.1., and the "other than direct classroom instruction" prong in N.C. Gen. Stat. § 115C-296.2(b)(2)d.2. Respondent contends that the only NBPTS certification areas the General Assembly intended to include in the "other than direct classroom instruction" prong were media and school counseling. This limit is not reflected anywhere in the language of N.C. Gen. Stat. § 115C-296.2(b)(2)d, however, and other than respondent's assurances, we can find no support for this proposition. The National Board does not classify its certification areas as "classroom" areas of certification and "other than classroom instruction" areas of certification. Thus, placing areas of NBPTS certification in these categories must come, if at all, from the language of our statute. We find no language which limits the "other than classroom instruction" to media and school counseling. See N.C. Gen. Stat. § 115C-296.2(b)(2)d.2. (2005).

Respondent points us to the distinct treatment afforded to "teachers" and "administrators" and states that "it cannot be presumed that the General Assembly was ignorant of them when it wrote the language in the statute at issue here." Respondent's interpretation of N.C. Gen. Stat. § 115C-296.2 conflicts with the language of the statute, as enacted by the General Assembly. Accordingly, we hold that respondent improperly withheld the salary increase from petitioner and we reverse the judgment of the trial court.

Reversed.

Chief Judge MARTIN and Judge STEELMAN concur.