TONY LEE CURTIS, Petitioner v. NORTH CAROLINA DEPARTMENT OF
TRANSPORTATION, Respondent

No. COA99-1221

(Filed 7 November 2000)

**1. Administrative Law— standard of review—whole record test**

The standard of review applied by the Court of Appeals to a State Personnel Commission decision was the whole record test where, despite the allegation of certain errors of law, the crux of the petition focused on whether the SPC's final decision was supported by substantial evidence.

**2. Public Officers and Employees— state employee—demotion and transfer—not politically motivated—causal connection—speculation**

The trial court did not err by determining that a DMV employee's transfer and demotion were not politically motivated where the employee had reluctantly accepted a prior transfer from Asheville to Wilmington, which he did not preserve for review, immediately began trying to return to Asheville, and eventually succeeded, although with a demotion. Petitioner satisfied the first two elements of making a prima facie case in that his was not a policymaking position and he was sympathetic to the Republican Party although registered a Democrat (political affiliation need not be strictly defined along party lines), but did not show a causal connection between his political affiliation in that his testimony to that affect was only speculative.

**3. Public Officers and Employees— state employee—demotion and transfer—just cause**

DMV did not act without just cause in demoting and transferring an employee to Asheville where the employee had previously worked in Asheville, specifically asked for a transfer back to Asheville and was willing, however begrudgingly, to accept a demotion if that was required.

**4. Public Officers and Employees— state position—refusal to hire—not political**

The State Personnel Commission and the trial court correctly concluded that DMV's refusal to hire petitioner for certain positions in Asheville was not the result of political discrimination

where petitioner made a prima facie case in that the position was non-policymaking, petitioner is a Republican party sympathizer, and petitioner demonstrated a causal connection in that the people hired were related to or knew high officials in the Democratic Party, but DMV articulated a non-discriminatory reason for refusing to hire petitioner in that he had ineffective supervisory skills.

**5. Public Officers and Employees— state employee—transfer—salary reduction—breach of alleged agreement**

The contention of a petitioner who was transferred by DMV with a salary reduction that the reduction violated an agreement he had with DMV was not addressed in an appeal from a contested case hearing before the Office of Administrative Hearings and the State Personnel Commission. Breaches of alleged agreements between the State and an employee are not among the statutorily listed exclusive grounds for contested case hearings; furthermore, the administrative law judge did not conclude that any such agreement ever existed.

**6. Public Officers and Employees— state employee—promotion and demotion within one year—salary level**

The salary of a DMV employee should have been adjusted to its former level where he was promoted from Captain to Inspector and then demoted to Sergeant within the same year in conjunction with a move from Asheville to Wilmington and back to Asheville. According to the plain language of the State Personnel Commission Rule applicable at that time, petitioner's post-demotion salary must return to the original salary and it is irrelevant that his final position as Sergeant was at a lower level than the beginning position as Captain. The rule applies anytime an employee is promoted and then demoted to any lower class within the same year.

Judge HUNTER concurring in the result.

Appeal by petitioner from order entered 8 July 1999 by Judge James U. Downs in Buncombe County Superior Court. Heard in the Court of Appeals 28 August 2000.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Albert L. Sneed, Jr. and Jennifer W. Moore, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Gwendolyn W. Burrell, for respondent-appellee.*

LEWIS, Judge.

Petitioner Tony Lee Curtis is employed by the Enforcement Section of the North Carolina Division of Motor Vehicles ("DMV"). Although he is a registered Democrat, he has several ties to the Republican Party. In 1992, during the administration of Republican Governor James G. Martin, petitioner was promoted to Captain at the Asheville Weigh Station. After the present Governor, Democrat James B. Hunt, Jr., took office in 1993, the DMV, in a letter dated 20 May 1993, informed petitioner he was being transferred to the Wilmington Weigh Station to serve as Inspector. An internal reorganization of the Enforcement Section was cited as the reason for this transfer. The Inspector position to which petitioner was being transferred actually was a promotion from his previous position as Captain. Nonetheless, petitioner did not want to move to Wilmington, as his wife had recently been diagnosed with cancer and would receive better health insurance benefits with her employer in Asheville. However, petitioner never filed a formal grievance contesting this transfer. Instead, he begrudgingly reported to Wilmington as directed. Petitioner immediately began efforts to be reassigned back to Asheville. He eventually filed a request with the DMV for a hardship transfer, in which he stated, "If taking a demotion to Sergeant will enable me to return to Asheville I have no complaints what so ever."

Meanwhile, four Inspector positions with the Asheville Weigh Station opened up in 1993: two in May (before petitioner's transfer), one in July, and one in August. Petitioner never applied for the two May openings, but he did apply for the July and August openings. However, the DMV did not award petitioner either of the Inspector positions, noting that his hardship transfer petition had stated a willingness to accept the position of Sergeant instead.

The DMV eventually granted petitioner his request to be transferred back to Asheville, effective 1 September 1993. During discussions regarding his requested transfer, petitioner claims he was told that, should he be demoted to Sergeant, his pay would only decrease a few dollars a month. No specific figures were discussed. Upon his transfer, however, his annual pay decreased $3175, or some $265 per month.

Petitioner thereafter filed a petition for a contested case hearing with the Office of Administrative Hearings ("OAH"), alleging that his transfer and demotion to Asheville were done without just cause, in violation of N.C. Gen. Stat. § 126-35, and were politically-motivated,

in violation of N.C. Gen. Stat. § 126-34.1. The Administrative Law Judge ("ALJ") dismissed petitioner's claims, concluding that the DMV's actions could not have been done without just cause, nor were they politically-motivated, because petitioner specifically asked for the transfer and demotion in the first place. After the State Personnel Commission ("SPC") and the Superior Court both affirmed the ALJ, this Court reversed. In an unpublished opinion, we concluded that even voluntary requests for transfers or demotions can serve as the basis for unjust cause and political discrimination claims. We also held that petitioner had adequately raised the issue of political discrimination in the context of the DMV's refusal to hire petitioner for the Inspector positions in Asheville that opened up.

On remand, the SPC reviewed the administrative record and concluded petitioner's demotion and transfer to Asheville were neither politically-motivated nor done without just cause. Furthermore, the SPC concluded the DMV's refusal to hire petitioner for one of the Inspector positions in Asheville was not politically-motivated. Finally, the SPC concluded that the $265 per month pay cut resulting from his demotion violated no agreement between him and the DMV, but fell within the salary range set forth by the applicable rules for DMV employees. Upon judicial review in Superior Court, the trial judge adopted the findings and conclusions of the SPC and then affirmed its order in every respect. Petitioner appealed to this Court.

[1] At the outset, we must determine our standard of review. That standard of review will depend upon the nature of the error alleged in the petition for judicial review. *Dorsey v. UNC-Wilmington*, 122 N.C. App. 58, 62, 468 S.E.2d 557, 559, *cert. denied*, 344 N.C. 629, 477 S.E.2d 37 (1996). If errors of law are alleged, our review is de novo. *Id.* If the alleged error is that the final agency decision is not supported by the evidence, we employ the "whole record" test. *Id.* Here, although the petition for judicial review alleges certain errors of law, the crux of the petition focuses on whether the SPC's final decision was supported by substantial evidence. Accordingly, the appropriate standard of review is the "whole record" test. That test requires us to examine the administrative record and determine whether it contains substantial evidence to support the agency's decision. *Id.* at 62, 468 S.E.2d at 560. With this standard in mind, we now proceed to the merits of petitioner's claims.

[2] We begin by discussing petitioner's demotion and transfer to Asheville. Significantly, we are not presented with the issue of peti-

tioner's original transfer to Wilmington. Despite petitioner's repeated attempts before the ALJ and this Court to make that an issue, he never filed a grievance contesting that transfer. Accordingly, the ALJ correctly dismissed that issue as not properly before him. Petitioner did not appeal that dismissal or otherwise act to preserve the issue for our review. We therefore only focus on petitioner's transfer from Wilmington back to Asheville. In this regard, we will analyze his political discrimination and unjust cause claims separately.

Our statutes expressly prohibit the demoting of State employees based upon their political affiliation. N.C. Gen. Stat. § 126-34.1(a)(2)(b) (1999). However, our courts have not heretofore outlined the elements of such a claim. As in the context of other discrimination claims, we look to federal decisions for guidance. *Dept. of Correction v. Gibson*, 308 N.C. 131, 136, 301 S.E.2d 78, 82 (1983). In our federal courts, a prima facie case of political discrimination requires showing (1) the employee works for a public agency in a non-policymaking position (i.e., a position that does not require a particular political affiliation), (2) the employee had an affiliation with a certain political party, and (3) the employee's political affiliation was the cause behind, or motivating factor for, the demotion or other adverse employment action. *Robertson v. Fiore*, 62 F.3d 596, 599 (3d Cir. 1995) (per curiam). If the employee makes out a prima facie case, the burden then shifts to the employer to articulate a non-discriminatory reason for the adverse action. *Graning v. Sherburne County*, 172 F.3d 611, 615 (8th Cir. 1999). The employer's burden is simply one of production and nothing more. *Gibson*, 308 N.C. at 138, 301 S.E.2d at 83. If the employer satisfies this requirement, the burden then shifts back to the employee to prove that the reason given was in fact just a pretext. *Graning*, 172 F.3d at 615. In other words, the ultimate burden of persuasion rests with the employee. *Gibson*, 308 N.C. at 138, 301 S.E.2d at 83.

We conclude petitioner has satisfied the first two elements of his prima facie case. The position of Inspector is not a policymaking position for which a particular political affiliation may be required. Furthermore, petitioner has demonstrated that, although a registered Democrat, he is in fact more sympathetic to the Republican Party. In this respect, we disagree with the DMV's contention that petitioner could not be politically discriminated against because he and the administration in power were registered members of the same party. For purposes of political discrimination claims, an employee's political affiliation need not be strictly defined along party lines; intra-

party discrimination may also form the basis for a complaint. *Robertson*, 62 F.3d at 600. This is so because "[t]he danger that employees will abandon the expression or exercise of their political beliefs to appease their supervisors is not diminished because a supervisor supports a different identifiable faction within a party as compared to a different party altogether." *Id.*

However, we conclude petitioner has not satisfied the third element of his prima facie case. There is not substantial evidence in the record before us to support a causal connection between his political affiliation and his demotion and transfer back to Asheville. At the hearing before the ALJ, petitioner admitted the demotion and transfer was not the product of any disciplinary actions but was the result of the letters he wrote requesting a transfer. He even admitted he was willing to quit his job in Wilmington altogether in order to return to Asheville. Although his transfer request may not have been truly voluntary, instead being compelled by his wife's circumstances, the *only* testimony suggesting any sort of political discrimination is petitioner's testimony to the following effect:

Q: Why then did you write that letter [requesting a transfer], marked as Exhibit 25?

A: After seeing the positions being filled up here [in Asheville] with people I knew that played politics, I knew I wouldn't be able to get back as an inspector. So that was my alternative, to come back as a sergeant.

(1 Tr. at 30). This testimony amounts to nothing more than speculation. Absent more specific evidence, we cannot say petitioner met his burden of showing a causal connection. We therefore uphold the trial court's determination that petitioner's demotion and transfer to Asheville was not politically-motivated.

[3] We next determine whether his demotion and transfer were done without just cause, in violation of N.C. Gen. Stat. § 126-35. We reject this claim as well. Petitioner had specifically asked for a transfer back to Asheville and was willing, however begrudgingly, to accept a demotion if that was required. The DMV thus gave petitioner exactly what he sought—a position in Asheville. By accommodating his request, the DMV did not act without just cause.

[4] Having rejected petitioner's claims based upon his demotion and transfer to Asheville, we now consider whether the DMV's refusal to hire petitioner for one of the Inspector positions in Asheville was the

CURTIS v. N.C. DEP'T OF TRANSP.

[140 N.C. App. 475 (2000)]

product of political discrimination. Although four such positions in Asheville became available, only the July 1993 and August 1993 positions are ones for which petitioner applied. Accordingly, we limit our review to a consideration of those two.

We conclude petitioner has made out a prima facie case of political discrimination as to both the July and August openings. Our previous analysis as to the first two elements is equally applicable here: "Inspector" is a non-policymaking position, and petitioner is a Republican Party sympathizer. Furthermore, petitioner has demonstrated a causal connection between his political affiliation and the DMV's refusal to hire him. In particular, petitioner testified that Joe Whitt, the person to whom the July position was eventually offered, is the brother of a precinct chairman of the Democratic Party in Buncombe County. As for the August position, petitioner testified that Joe Austin, the one eventually hired, "knows a lot of people," including several high-ranking officials in the Democratic Party. (1 Tr. at 39). This testimony was sufficient to fulfill the causal connection requirement.

Once petitioner satisfied the three elements of his prima facie case, it was then incumbent upon the DMV to articulate some non-discriminatory reason for refusing to hire petitioner. *Graning*, 172 F.3d at 615. The DMV did so. Arnold Craig, former district supervisor in Asheville, testified that petitioner "was weak as a supervisor" and could not manage the weigh station. (1 Tr. at 176). Specifically, according to Mr. Craig, petitioner "was having difficulty in supervising the men out there. The men weren't responsive." (1 Tr. at 176). Ineffective supervisory skills was a legitimate non-discriminatory reason to satisfy the DMV's burden. The burden then shifted back to petitioner to prove the DMV's alleged reason was in fact pretextual. In addressing this alleged reason,

> [t]he trier of fact is not at liberty to review the soundness or reasonableness of an employer's business judgment when it considers whether alleged disparate treatment is a pretext for discrimination.
>
> . . . "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason must be reasonably articulated and nondiscriminatory, but does not have to be a reason that the judge or jurors would act upon or approve."

CURTIS v. N.C. DEP'T OF TRANSP.

[140 N.C. App. 475 (2000)]

*Gibson,* 308 N.C. at 140, 301 S.E.2d at 84 (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n.6 (1st Cir. 1979)). Here, the SPC ultimately concluded petitioner failed to prove that the DMV's reason was pretextual. Upon our review of the entire record, we hold there was substantial evidence to support this conclusion. Petitioner was repeatedly asked for specific facts to back up his allegations of political discrimination. His only response was, "I guess the biggest fact is me being around for twenty-three years, and me knowing how things work out with politics, the rumor mill, that sort of thing." (1 Tr. at 57). This scant evidence based more on innuendo and conjecture than on actual facts is insufficient to overturn the SPC's and the trial court's conclusions.

[5] Finally, we turn to petitioner's decrease in pay as a result of his demotion and transfer to Asheville. He first contends his $265 per month salary reduction violated an agreement he had with the DMV that his pay would only decrease a few dollars a month. We need not address this specific contention as it is not properly before us. This is an appeal from a contested case hearing before the OAH and the SPC. N.C. Gen. Stat. § 126-34.1 lists the exclusive grounds for contested case hearings, including harassment, dismissals, demotions, reductions in force, suspensions, retaliatory actions, and certain other unlawful State employment practices. Breaches of alleged agreements between the State and the employee (even if regarding pay) are not among those grounds specifically listed. Accordingly, neither the OAH, the SPC, the Superior Court, nor this Court has subject matter jurisdiction to consider this argument. Furthermore, the ALJ—upon whose findings everything else is based—nowhere even concluded that any such "agreement" ever existed.

[6] In the alternative, petitioner claims his resultant pay cut was not within the salary range prescribed by the SPC's own rules regarding pay. Prior to his transfer to Wilmington, petitioner's salary was $34,768. Following this transfer, at which time he was also promoted to Inspector, he earned $35,463 per year. And following his demotion and return to Asheville, his salary dropped to $32,288. Petitioner claims the applicable rules required that, upon his return to Asheville, his pay should have only been reduced to $34,768, the amount he was earning before his initial transfer. We agree.

In 1993, the applicable SPC rules stated:

When an employee is promoted and subsequently demoted or reassigned, or is reallocated upward and subsequently reallo-

cated downward, demoted or reassigned to any lower class within one year, the following shall apply:

> (1) the salary shall revert to the salary being paid before the promotion or reallocation, plus any increases that would have been given had the promotion not occurred.

N.C. Admin. Code tit. 25, r. 1D.04046(a) (Aug. 1991). Here, petitioner was promoted from Captain to Inspector and then demoted from Inspector to Sergeant all within the same year. According to the plain language of the rule, petitioner's post-demotion salary therefore must return to the same as that which he was earning prior to his original promotion—$34,768. The fact that his post-promotion position of Sergeant was at a lower level than his pre-promotion position of Captain is irrelevant under the applicable rule; the rule applies anytime an employee, within the same year, is promoted and then demoted "to *any* lower class." Although Rule 1D.0406 has subsequently been amended such that the same salary requirement applies only if the pre-promotion position and post-demotion position are "in the same grade level," this amendment did not take effect until 1995, after the relevant time period here. Thus, petitioner's salary must be adjusted upward by the SPC pursuant to its own rules.

Affirmed in part, reversed and remanded in part.

Judge WALKER concurs.

Judge HUNTER concurs in the result.

Judge HUNTER concurring in the result.

I concur in the result of the majority opinion but write separately to articulate my disagreement with part of the majority's reasoning. I agree with the majority that petitioner has not satisfied the third element of the *prima facie* case for his claim that he was demoted and transferred from Wilmington to Asheville due to his political affiliation. The third element required for making a *prima facie* case of political discrimination is a showing of a causal relationship between the petitioner's political affiliation and the adverse employment action. *Robertson v. Fiore*, 62 F.3d 596 (3rd Cir. 1995). The majority found that this element was not satisfied since petitioner had written letters to DMV requesting that he be demoted and transferred to

Asheville. Thus, the only evidence admitted suggesting political discrimination was mere speculation.

I respectfully disagree with the majority's conclusion that petitioner satisfied the elements required for making a *prima facie* case with respect to DMV's refusal to hire petitioner for the Asheville inspector positions that became available in July and August of 1993. In my opinion, the third element for establishing a *prima facie* case of political discrimination, the causal connection requirement, was not met and the evidence presented by petitioner on this claim, as the evidence presented for the demotion and transfer claim, was mere speculation. The majority finds that the causal connection requirement was met because of petitioner's unsubstantiated testimony that Joe Whitt, the person to whom the July inspector position was offered, is the brother of a precinct chairman of the Democratic Party in Buncombe County. Joe Austin, the person eventually hired for the August inspector position, "knows a lot of people," including several high-ranking officials in the Democratic Party. This testimony was *nothing more than mere speculation.* In my opinion, the petitioner did not satisfy the causal connection existing between his political affiliation and DMV's refusal to hire him. Under the majority's holding, an employee working for a public agency in a non-policymaking position, who has an affiliation with a certain political party, need only speculate as to the causal connection between the political affiliation and the adverse employment action in order to make out a *prima facie* case for political discrimination. I would hold that this is insufficient to satisfy the causal connection requirement of a political discrimination claim.