GARY P. RAMSEY, PETITIONER v. N.C. DIVISION OF MOTOR VEHICLES, RESPONDENT

No. COA06-931

(Filed 17 July 2007)

**1. Appeal and Error— contested case—guidelines**

Appellate review of the superior court's consideration of a contested case petition was to determine whether the trial court exercised the appropriate scope of review and whether it did so properly.

**2. Administrative Law— contested case-appeal to superior court—standard of review**

The superior court applied the correct standard of review to a contested case involving a dismissed DMV enforcement officer where the State Personnel Commission did not adopt the ALJ's decision. The superior court was therefore required to review the official record de novo and to make its own findings of fact and conclusions of law.

**3. Public Officers and Employees— dismissal of employee— violation of rule not willful**

The superior court did not err on de novo review of the dismissal of a DMV enforcement officer by holding that the officer had violated a rule when he solicted car dealerships for funding for two captains' meetings, but not willfully, and by concluding that his actions did not rise to the level of just cause for dismissal.

Appeal by respondent from judgment entered 6 February 2006 by Judge Nathaniel J. Poovey in Buncombe County Superior Court. Heard in the Court of Appeals 21 February 2007.

*Roy Cooper, Attorney General, by Allison A. Pluchos, Assistant Attorney General, for respondent.*

*Long, Parker, Warren & Jones, P.A., by W. Scott Jones and Robert B. Long, Jr., for petitioner.*

ELMORE, Judge.

On 23 May 2002, the North Carolina Division of Motor Vehicles (DMV or respondent) dismissed Gary P. Ramsey (petitioner) from his employment as a Captain with the Enforcement Section of the DMV in District VIII. Respondent dismissed petitioner because petitioner violated a written work order known as General Order No. 24.

General Order No. 24, in relevant part, states:

Members shall neither solicit nor accept from any person, business or organization any bribe, gift or gratuity, for the benefit of the member, their family or the Enforcement Section if it may reasonably be inferred that the person, business or organization giving the gift:

a. seeks to influence the action of an official nature, or

b. seeks to affect the performance or non-performance of an official duty, or

c. has an interest which may be substantially affected, either directly or indirectly, by the performance or non-performance of an official duty.

At the time the events in question occurred, the Enforcement Section of the DMV held "Captains' Meetings" outside of Raleigh one or two times per year at different locations around the state. All DMV captains and lieutenants from the eight DMV districts attended these meetings, along with personnel from DMV headquarters and representatives from the DMV Commissioner's office. The meetings typically included training sessions and recreational golf outings. Attendees generally stayed at the facility hosting the meeting and were provided some meals. Each attendee paid for his own meals and lodging, but "[t]he evidence is conflicting as to how many, if any, attendees paid out of pocket for golf at the various

Captains' meetings. Golfing fees were not furnished or reimbursed by the State."

Each Captains' Meeting was planned by the captain in charge of the district in which the meeting would be held. Petitioner planned the 1998 and 1999 Captains' Meetings, which were held at the Waynesville Country Club. Petitioner determined that he would not be able to keep the cost per attendant below $52.00 per day, which was the applicable *per diem* allowance at the time. Petitioner then raised additional funds from automobile dealers throughout his district, and used the funds to cover the difference between the actual cost of the meeting and the *per diem* allowance. Petitioner raised a total of $3,500.00 for the 1998 Captains' Meeting and $2,950.00 for the 1999 Captains' Meeting. Automobile dealers also contributed door prizes of greater than *de minimis* value. This fundraising was sanctioned by one of petitioner's supervisors, Lt. Col. William Brinson, who told petitioner "that he should talk to his 'dealer friends' and that 'no Captain was worth his salt' who couldn't get some help from his dealers." The "dealers" referenced by Brinson are automobile dealers regulated by the DMV. Several witnesses corroborated this conversation. In addition, "It was apparent to any reasonable person attending and participating in either the 1998 or 1999 . . . Captains' Meetings that all of the rooms, meals, golf, refreshments, prizes, and gifts provided could not have been provided for within the state per diem [sic] allowance." Previous Captains' Meetings, which petitioner had attended, sometimes provided meals, alcohol, and door prizes without charge.

Brinson's immediate successor, Lt. Col. Michael Sizemore, ordered that certain documents related to questionable fundraising, including petitioner's, "disappear." On Sizemore's order, another DMV employee "brought the documents back to Asheville and ordered that they be thrown away by one of the inmates of the N.C. Department of Correction working for DMV, who placed the documents in a garbage dumpster." Before the dumpster was emptied, the documents "were discovered by another employee of DMV who removed them from the dumpster and provided them to Petitioner's counsel."

Petitioner was dismissed because his solicitation of funds for the 1998 and 1999 Captains' Meetings violated General Order No. 24. He filed a petition for contested case hearing, which was heard before an administrative law judge (ALJ). The ALJ made extensive findings of fact and concluded that "a reasonable person in Petitioner's circumstances existing at the time would more likely than not expect to be

warned that conduct which he had observed as a pattern and practice at DMV, with apparent acceptance by superiors in DMV, was sufficient to compel his discharge." The ALJ found "that sufficient evidence ha[d] been produced to constitute just cause for Petitioner's dismissal but that, considering Petitioner's outstanding work record and his good faith belief that his actions were within the accepted pattern and practice of the DMV Enforcement Section . . . [p]etitioner should be reinstated to his position." In addition, the ALJ ordered respondent to "pay Petitioner back pay and all benefits to which he would have been entitled but for his dismissal from the date of his dismissal on May 23, 2002 until the date of his reinstatement . . . ." Petitioner did not receive any attorneys' fees in connection with this case and was disciplined by receipt of a written warning.

Respondent appealed the ALJ's decision to the State Personnel Commission (the Commission), who reversed the ALJ's decision after a brief hearing. The Commission adopted the ALJ's findings of fact, but concluded that respondent had just cause to dismiss petitioner.

Petitioner then appealed to the Buncombe County Superior Court pursuant to N.C. Gen. Stat. § 150B-51(c). The superior court made substantial and detailed findings of fact and conclusions of law. It ordered that petitioner be reinstated to his position at the DMV; that respondent "pay Petitioner back pay and all benefits to which he would have been entitled . . . from the date of his dismissal on 23 May 2002 until the date of his reinstatement"; that petitioner receive a written warning; that respondent pay costs, except for petitioner's attorneys' fees; and that the matter be remanded to the State Personnel Commission. Respondent appeals from the order.

Respondent argues that the superior court erred by reversing the Commission's order. Specifically, respondent notes that, "Like OAH and the SPC[,] the trial court concluded that Petitioner's actions violated a known work rule, General Order No. 24." However, "the trial court concluded that DMV did not have just cause to dismiss Petitioner thereby ordering his reinstatement along with a written warning." Respondent argues that the trial court misapplied 25 N.C.A.C. 1B.0431 by ordering reinstatement, back pay, and benefits without finding a lack of substantive just cause. Respondent also argues that the superior court applied the wrong standard of review. We disagree.

[1] Our review of the superior court's order is governed by N.C. Gen. Stat. § 150B-52, which states, in relevant part, "The scope of review to

be applied by the appellate court under this section is the same as it is for other civil cases. In cases reviewed under G.S. § 150B-51(c), the court's findings of fact shall be upheld if supported by substantial evidence." N.C. Gen. Stat. § 150B-52 (2005). "N.C. Gen. Stat. § 150B-51(c) (2005) governs judicial review in contested case petitions filed after 1 January 2001. The provision was added to the North Carolina Administrative Procedures Act (APA) in 2000 . . . ." *Rainey v. N.C. Dep't of Pub. Instruction*, 181 N.C. App. 666, 670, 640 S.E.2d 790, 794 (2007). Petitioner commenced this case on 4 October 2002; therefore we apply section 150B-51(c). In turn, N.C. Gen. Stat. § 150B-52 "governs our Court's review of the trial court's judgment in a case arising from a contested case petition . . . ." *Id.* Accordingly, because this case arises from a contested case petition, our review is bound by the guidelines set out in section 150B-52.

"Pursuant to N.C. Gen. Stat. § 150B-52, our review of a trial court's consideration of a final agency decision is to determine whether the trial court committed any errors of law which would be based upon its failure to properly apply the review standard set forth in N.C. Gen. Stat. § 150B-51." *Sherrod v. N.C. Dept. of Human Resources*, 105 N.C. App. 526, 530, 414 S.E.2d 50, 53 (1992). Our review of the superior court's order for errors of law is a "twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Rainey*, 181 N.C. App. at 671, 640 S.E.2d at 794 (citation omitted).

[2] Accordingly, we first determine whether the superior court "exercised the appropriate scope of review." According to its order, the superior court conducted "a complete <u>de novo</u> review of the entire record." N.C. Gen. Stat. § 150B-51(c) provides that when a superior court reviews

> a final decision in a contested case in which an administrative law judge made a decision, in accordance with G.S. 150B-34(a), and the agency does not adopt the administrative law judge's decision, the court shall review the official record, *de novo*, and shall make findings of fact and conclusions of law. In reviewing the case, the court shall not give deference to any prior decision made in the case and shall not be bound by the findings of fact or the conclusions of law contained in the agency's final decision. The court shall determine whether the petitioner is entitled to the relief sought in the petition, based upon its review of the official record. The court reviewing a final decision under this subsection

may adopt the administrative law judge's decision; may adopt, reverse, or modify the agency's decision; may remand the case to the agency for further explanations under G.S. 150B-36(b1), 150B-36(b2), or 150B-36(b3), or reverse or modify the final decision for the agency's failure to provide the explanations; and may take any other action allowed by law.

N.C. Gen. Stat. § 150B-51(c) (2005). In this contested case, the Commission did not adopt the ALJ's decision, and therefore the superior court was required to review the official record *de novo* and to make its own findings of fact and conclusions of law. We therefore hold that the superior court applied the correct standard of review, and we now proceed to the second prong of our analysis, whether the superior court "properly exercised" its *de novo* review.

[3] Although respondent assigns error to the superior court's findings of fact, it argues that the superior court erred by concluding that petitioner's actions did not rise to the level of "just cause" for his dismissal. Respondent's arguments seem to hinge on a perceived inconsistency between the trial court concluding that petitioner violated General Order No. 24, and also concluding that this violation did not rise to the level of unacceptable personal conduct. This apparent disconnect is easily resolved by reference to the Administrative Code.

An employee "may be warned, demoted, suspended or dismissed by the appointing authority" only for "just cause." 25 N.C.A.C. 1J.0604(a) (2006). "There are two bases for the discipline or dismissal of employees under the statutory standard for 'just cause' as set out in G.S. 126-35." 25 N.C.A.C. 1J.0604(b) (2006). The relevant basis here is "[d]iscipline or dismissal imposed on the basis of unacceptable personal conduct." 25 N.C.A.C. 1J.0604(b)(2) (2006). Unacceptable personal conduct is defined, in relevant part, as:

(1) conduct for which no reasonable person should expect to receive prior warning; or

(2) job-related conduct which constitutes a violation of state or federal law; or

* * *

(4) the willful violation of known or written work rules; or

(5) conduct unbecoming a state employee that is detrimental to state service

25 N.C.A.C. 1J.0614(i)(1)-(2), (4)-(5) (2006).

Although the superior court concluded that petitioner "did violate General Order Number 24," it also concluded that petitioner "held a good faith belief that his actions were within the accepted pattern and practice of employees in the DMV Enforcement Section in funding captains' meetings . . . ." The superior court further concluded that "a reasonable person in Petitioner's position at that time (1998 and 1999) would have expected to be warned before being dismissed for the actions described herein." In relevant part, the Administrative Code defines unacceptable personal conduct as "*willful* violation of known or written work rules." 25 N.C.A.C. 1J.0614(i)(4) (2006) (emphasis added). Here, the superior court concluded only that petitioner violated the rule, not that petitioner violated the rule *willfully*. This is consistent with the superior court's other conclusions because one cannot simultaneously have a "good faith belief" that he is following a rule and willfully violate that rule. Accordingly, we hold that the superior court did not misapply the law by concluding that petitioner both violated the rule and did not commit unacceptable personal conduct.

Respondent also argues that the superior court erred by "second guessing" the "disciplinary actions it cho[se] to take against an employee when the employee's conduct constitutes 'just cause' within the meaning of 25 N.C.A.C. 1J.0604." Having already determined that the superior court did not err in concluding that petitioner's conduct did not constitute "just cause," this argument is moot. Furthermore, N.C. Gen. Stat. § 150B-51(c) states that "[t]he court reviewing a final decision under this subsection may adopt the administrative law judge's decision; may adopt, reverse, or modify the agency's decision . . . and may take any other action allowed by law." N.C. Gen. Stat. § 150B-51(c) (2005). The superior court adopted the decision made by the ALJ,[1] a proper action anticipated by the statute.

Accordingly, we affirm the decision of the superior court.

Affirmed.

Judges TYSON and GEER concur.

---

1. We note that the superior court did not find just cause for petitioner's dismissal, but the ALJ did. However, the ALJ nevertheless ordered petitioner to be reinstated with back pay and benefits because of his "outstanding work record and his good faith belief that his actions were within the accepted pattern and practice of the DMV Enforcement Section."