BENNIE LEON CORBETT, Petitioner v. NORTH CAROLINA DIVISION OF MOTOR VEHICLES, Respondent

No. COA07-791

(Filed 6 May 2008)

**1. Public Officers and Employees— contested case based on racial discrimination—jurisdiction—constructive discharge**

The trial court did not err by concluding the Office of Administrative Hearings had jurisdiction to hear petitioner state employee's contested case under N.C.G.S. § 126-34.1 because: (1) constructive discharge is recognized as grounds for jurisdiction over an employee's claim where an employee alleges his choices are limited to working under conditions in violation of the law or be deemed to have resigned; (2) petitioner's contested case was based on his resignation under protest; (3) petitioner alleged he was forced to either resign or withdraw from a campaign for sheriff, and he alleged his treatment was discriminatory since only African-American employees were given the choice to withdraw from a campaign or resign from employment; and (4) petitioner's letter of resignation stated he resigned under protest and his resignation was not voluntary.

**2. Administrative Law— judicial review of administrative decision—scope of review**

When the Court of Appeals reviews appeals from the superior court either affirming or reversing the decision of an administrative agency, its scope of review is twofold including whether the superior court used the appropriate standard of review and, if so, whether the superior court properly applied this standard.

### 3. Public Officers and Employees— racial discrimination— prima facie case—pretext for discrimination

The trial court appropriately applied the de novo standard of review required by N.C.G.S. § 150B-51(c) in a contested case hearing regarding employment discrimination when it determined that the Administrative Law Judge's (ALJ) findings and conclusions were supported by the record because: (1) petitioner employee met his initial burden of establishing that the adverse employment action was motivated by race by presenting evidence showing that African-American employees who were candidates for political office were treated differently from Caucasian employees who were candidates for political office; (2) although respondent presented evidence of nondiscriminatory reasons for its actions to rebut a presumption of discrimination, petitioner proved the Hatch Act was a pretext for discrimination when it was disproportionately applied to respondent's African-American employees; (3) the trial court is under no obligation to adopt the findings of the State Personnel Commission even where there is some evidence to support those findings; and (4) there was substantial evidence to support the ALJ's findings which in turn supported his conclusions of law.

Appeal by respondent from order entered 29 June 2007 by Judge A. Leon Stanback in Wake County Superior Court. Heard in the Court of Appeals 15 January 2008.

*Ferguson, Stein, Chambers, Gresham and Sumter, by Julius L. Chambers, for petitioner-appellee.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Neil Dalton, for respondent-appellant.*

CALABRIA, Judge.

The North Carolina Division of Motor Vehicles ("NCDMV") appeals an order affirming an administrative law judge's determination that respondent discriminated against Bennie Leon Corbett ("Corbett"). We affirm.

Corbett, an African-American employee of NCDMV, began employment as a vehicle enforcement officer with the motor carrier program ("motor carrier officer") on 1 December 1997. A motor carrier officer inspects commercial vehicles for safety on the highways. Shortly after Corbett began employment, he was transferred to a

weight officer position under Captain J.F. Jones ("Capt. Jones"). In September 2000, Corbett requested and was granted a transfer to return to the motor carrier program. Capt. Jones remained Corbett's district supervisor.

On 22 February 2002, Corbett notified Col. David Richards ("Col. Richards"), the supervising director of the enforcement division of NCDMV, of his intention to run for Sheriff of Pender County ("Sheriff"). Corbett informed Col. Richards he would not use any state-owned equipment during his campaign, in accordance with NCDMV's policy regarding employees' candidacy for public office. Corbett was told by his district supervisor, Capt. Jones, that NCDMV did not "foresee any problems." Corbett paid his filing fee and began to campaign.

In June of 2002, Amber Bell ("Bell") of the Office of Special Counsel ("OSC") in Washington, D.C., learned that Corbett may have violated the Hatch Act. The Hatch Act prohibits employees who are employed by a state agency that receives federal funding from participating as candidates in partisan elections. 5 U.S.C.A. §§ 1501-1503 (2007). After unsuccessful attempts to contact Corbett directly, Bell notified Col. Mike Sizemore ("Col. Sizemore"), Col. Richards' successor and the acting colonel of the enforcement division, of OSC's investigation of Corbett. Col. Sizemore believed that if OSC found Corbett to be in violation of the Hatch Act, then NCDMV "would be at risk to lose all its federal highway dollars." Bell asked about Corbett's duties and the source of funding for his salary and equipment. Col. Sizemore told her "essentially everything in the fifty-eight positions . . . in the motor carrier program came from federal highway money, the equipment and the personnel." Bell told Col. Sizemore that "it appeared that . . . Corbett was in violation," if Corbett continued employment with NCDMV and continued to be a candidate. Bell also told Col. Sizemore that violators of the Hatch Act have a choice to "either . . . drop out of the election that they were in, or . . . resign from the position they held with the state."

Col. Sizemore notified Corbett's district supervisor, Capt. Jones, of the violation and asked Capt. Jones whether any other employees under his supervision were candidates for public office or held a public office. Capt. Jones named Officer Hubert Sealey ("Sealey"), an African-American employee who was a candidate for commissioner of Robeson County. Capt. Jones also supervised Lynn McCall ("McCall"), a Caucasian employee who held an elected city council position in Brunswick County. Capt. Jones mentioned Sealey's name

but not McCall's to Col. Sizemore. Col. Sizemore instructed Capt. Jones to contact Sealey and Corbett regarding the Hatch Act limitations. Both Sealey and Corbett received memos from Capt. Jones directing them to either resign or withdraw from their campaigns. After further investigation of Sealey's position, the OSC determined his position did not receive the level of federal funding to render him subject to the Hatch Act.

Corbett was given ten days to decide whether to resign or withdraw from the race. He submitted an oral request to Capt. Jones for a leave of absence without pay, intending to resume his job once the campaign was over. Capt. Jones denied the request. Capt. Jones testified his denial was based on Corbett's failure to give seven days notice in advance of using vacation time. Corbett also asked for a transfer to the weight officer position, but was denied. On 21 July 2002, Corbett resigned under protest.

On 3 September 2002, Corbett applied to the Office of Administrative Hearings ("OAH") to contest his resignation. On 26 April 2004, Senior Administrative Law Judge Fred G. Morrison, Jr. ("Judge Morrison") found in favor of Corbett. On 17 June 2004, the State Personnel Commission ("SPC") considered Judge Morrison's recommendation. On 6 August 2004, the SPC dismissed Corbett's case for lack of jurisdiction.

On 28 February 2005, the SPC entered another decision and order. This order was not included in the record. Corbett requested judicial review of the SPC's 28 February 2005 decision in Wake County Superior Court. Wake County Superior Court Judge Kenneth Titus ("Judge Titus") reviewed the SPC's second order and determined the SPC did not cite reasons for not adopting Judge Morrison's findings as required by N.C. Gen. Stat. § 150-36(b)(1) (2007). Judge Titus remanded the matter to the SPC for further findings.

On 15 November 2005, the SPC reversed the OAH decision and found NCDMV's actions to be non-discriminatory. Corbett appealed to Wake County Superior Court.

In an order entered 29 June 2007, Wake County Superior Court Judge A. Leon Stanback ("Judge Stanback") reversed the SPC's 15 November 2005 decision and order, adopted the findings of the OAH, ordered Corbett to be reinstated to the same or similar position from which he resigned, and awarded attorneys' fees to Corbett. NCDMV appeals.

## I. Jurisdiction

[1] NCDMV argues resignation is not one of the grounds for appeal of a contested case under N.C. Gen. Stat. § 126-34.1. Therefore, NCDMV contends the OAH lacked grounds to hear Corbett's contested case. We disagree.

N.C. Gen. Stat. § 126-34.1(e) (2007) specifies that any issue for appeal through filing of a contested case that "has not been specifically authorized by this section shall not be grounds for a contested case under Chapter 126." *See also University of N.C. at Chapel Hill v. Feinstein*, 161 N.C. App. 700, 703, 590 S.E.2d 401, 403 (2003). N.C. Gen. Stat. § 126-34.1(a) allows State employees to file in the Office of Administrative Hearings a contested case

only [for] the following personnel actions or issues:

. . . .

(2) An alleged unlawful State employment practice constituting discrimination, as proscribed by G.S. 126-36, including:

a. Denial of a promotion, transfer, or training, on account of the employee's . . . race . . . .

b. Demotion, reduction in force, or termination of an employee in retaliation for the employee's opposition to alleged discrimination on account of the employee's . . . race. . . .

. . . .

(10) Harrassment in the workplace based upon . . . race, color, national origin . . . whether the harassment is based upon the creation of a hostile work environment or upon a quid pro quo.

Constructive discharge is recognized as grounds for jurisdiction over an employee's claim where an employee alleges his or her choices are limited to working under conditions in violation of the law or be deemed to have resigned. In *Campbell v. N.C. Dep't of Transp.*, 155 N.C. App. 652, 661, 575 S.E.2d 54, 60 (2003), this Court concluded that when an employee is "deemed to have voluntarily resigned" for his or her inability or unwillingness to work in conditions that may constitute discrimination, such resignation may constitute a constructive discharge entitling the employee to file a contested case alleging termination pursuant to N.C. Gen. Stat. § 126-34.1(a)(2)(b).

Corbett's contested case hearing was based on his resignation under protest.[1] Corbett alleged he was forced to either resign or withdraw from the campaign for Sheriff. Corbett alleged this treatment was discriminatory because only African-American employees were given the choice to withdraw from the campaign or resign from employment. Corbett's letter of resignation stated he resigned under protest and his resignation was not voluntary. We hold this was sufficient to establish a claim under N.C. Gen. Stat. § 126-34.1.

## II. Standard of Review

[2] "When this Court reviews appeals from superior court either affirming or reversing the decision of an administrative agency, our scope of review is twofold . . . : (1) whether the superior court applied the appropriate standard of review and, if so, (2) whether the superior court properly applied this standard." *Mayo v. N.C. State Univ.*, 168 N.C. App. 503, 507, 608 S.E.2d 116, 120 (2005) (citation omitted). N.C. Gen. Stat. § 150B-51(c) (2007) provides the standard of review of a final decision in a contested case in which the agency does not adopt the ALJ's decision:

> [T]he [superior] court shall review the official record, de novo, and shall make findings of fact and conclusions of law. In reviewing the case, the court shall not give deference to any prior decision made in the case and shall not be bound by the findings of fact or the conclusions of law contained in the agency's final decision. The court shall determine whether the petitioner is entitled to the relief sought in the petition, based upon its review of the official record. The court reviewing a final decision under this subsection may adopt the administrative law judge's decision; may adopt, reverse, or modify the agency's decision; may remand the case to the agency for further explanations under G.S. 150B-36(b1), 150B-36(b2), or 150B-36(b3), or reverse or modify the final decision for the agency's failure to provide the explanations; and may take any other action allowed by law.

*See also N.C. Dep't of Env't & Natural Res.*, 358 N.C. 649, 663, 599 S.E.2d 888, 897 (2004) (recognizing the superior court's authority to make alternative findings from the agency where the agency does not adopt the ALJ's findings).

---

1. We note that Corbett also alleges denial of his transfer request was discriminatory. Denial of a transfer may also be grounds for a contested case hearing. N.C. Gen. Stat. § 126-34.1(a)(2)(a).

Here, the trial court applied the appropriate standard of review. The trial court reviewed the record *de novo* and adopted the findings of the ALJ. We next determine whether the trial court properly applied the standard of review when it reversed the agency's decision after reviewing the entire record *de novo. Ramsey v. N.C. Div. of Motor Vehicles*, 184 N.C. App. 713, 717-18, 647 S.E.2d 125, 128 (2007).

## III. Discrimination

[3] NCDMV contends the ALJ's finding that NCDMV's Caucasian employees who were candidates for political office were treated differently from Corbett is not supported by the evidence. NCDMV also argues that the ALJ's conclusion of law that Corbett has met the *prima facie* burden of establishing that he and another African-American employee were treated differently from other Caucasian employees is not supported by the evidence. NCDMV further argues that Caucasian employees were not the subject of investigation because (1) they either were not subject to the Hatch Act since their positions did not receive federal funding, or (2) because they were candidates for office years prior to NCDMV's knowledge of the Hatch Act. NCDMV argues that since the Caucasian employees were not similarly situated to Corbett, the conclusion of law that Corbett met his *prima facie* burden is also not supported by the record. We disagree.

Our appellate review of the superior court's order under N.C. Gen. Stat. § 150B-51(c) is the same as appellate review in other civil cases. *Ramsey*, 184 N.C. App. at 717, 647 S.E.2d at 127 (citing N.C. Gen. Stat. § 150B-52 (2007)). The trial court's findings of fact should be upheld if supported by substantial evidence. *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977) (internal citation omitted).

### A. Prima Facie Case

In employment discrimination cases, the employee has the initial burden of establishing that the adverse employment action was motivated by an employee's race. *Curtis v. N.C. Dep't of Transp.*, 140 N.C. App. 475, 479, 537 S.E.2d 498, 501-02 (2000). "A prima facie case of discrimination may also be made . . . by showing the discharge of a black employee and the retention of a white employee under apparently similar circumstances." *Dept. of Correction v. Gibson*, 308 N.C. 131, 137, 301 S.E.2d 78, 83 (1983) (citation omitted). The employee

may meet that burden when he proves that he was treated less favorably than other employees of a different race. *N.C. Dept. of Correction v. Hodge*, 99 N.C. App. 602, 611, 394 S.E.2d 285, 290 (1990) (citing *Watson v. Ft. Worth Bank and Trust*, 487 U.S. 977, 986, 101 L. Ed. 2d 827, 839 (1988)) (SPC properly applied a disparate treatment analysis to determine that petitioner met the *prima facie* case of discrimination).

Corbett presented evidence showing that African-American employees who were candidates for political office were treated differently from Caucasian employees who were candidates for political office. When Capt. Jones was asked about other employees who held public office or who were candidates for public office, the only employee he mentioned was another African-American employee named Sealey. Capt. Jones did not give Col. Sizemore the name of a Caucasian employee, McCall, who was also employed under Capt. Jones. More importantly, McCall held a public office at the same time he was employed by NCDMV in a federally funded position.

NCDMV presented evidence that it reported a Caucasian employee to the OSC. Col. Sizemore reported Inspector Mike Smith ("Smith"), a Caucasian officer, to Bell. Smith was a candidate for the office of Sheriff of Davie County and Smith's position was state-funded. Bell determined Smith was not in violation of the Hatch Act because his position was not federally funded. Nevertheless, Smith did not receive the same directive as Sealey and Corbett. In fact, no directive was given to Smith. Only Corbett and Sealey, the two African-American employees who were candidates for political office, were given the order to either resign from their employment or withdraw from their campaigns. In addition, it was ultimately determined that Sealey was not in violation. However, that was determined only after Sealey received the directive to either resign or withdraw from office. Even though NCDMV alleges it was only recently made aware of the Hatch Act, this does not negate the fact that African-American employees were treated differently from their Caucasian counterparts. We conclude there is substantial evidence to support the ALJ's conclusion of law that Corbett met his *prima facie* burden of discrimination.

### B. Pretext

NCDMV next argues the superior court erred in concluding that NCDMV's reliance on the Hatch Act was a pretextual reason for racial discrimination. We disagree.

Once the employee has met the burden of establishing that an adverse employment action was motivated by race, the burden then shifts to the employer to articulate a non-discriminatory reason for the adverse action. *Curtis*, 140 N.C. App. at 479, 537 S.E.2d at 502. The employer's burden is one of production and not persuasion. *Id.* at 481, 537 S.E.2d at 503. "The employer is not required to prove that its action was actually motivated by the proffered reasons . . . . [I]t is sufficient if the evidence raises a genuine issue of fact as to whether the claimant is a victim of intentional discrimination." *Gibson*, 308 N.C. at 138, 301 S.E.2d at 83. To rebut this presumption of discrimination, the employer must "clearly explain by admissible evidence, the nondiscriminatory reasons for [the adverse employment action]. The explanation must be legally sufficient to support a judgment for employer." *Id.* at 139, 301 S.E.2d at 84 (internal citation omitted).

In the case *sub judice*, evidence presented showed that NCDMV rebutted the presumption of discrimination. Smith, a Caucasian employee, was reported to the OSC. Ultimately the OSC determined that Smith's position was not federally funded. Evidence was also presented that showed Capt. Jones responded to Col. Sizemore's request to name other employees who were candidates for or held political office, and named only the African-American employees. NCDMV presented a non-discriminatory reason for the unequal treatment because the Caucasian employee, McCall, was not subject to the Hatch Act because he was not a candidate for office. McCall already held the position and it was a non-partisan position. Smith was not subject to the Hatch Act because his position was not federally funded. Corbett's position did violate the Hatch Act because his position was federally funded and he was a candidate in a partisan election. These are non-discriminatory reasons for NCDMV's action and rebut a presumption of discrimination. The burden is shifted to Corbett to prove NCDMV's reasons were pretextual. *Curtis*, 140 N.C. App. at 479, 537 S.E.2d at 502 (If the employer articulates a non-discriminatory reason for the adverse action, then the burden shifts to the employee to prove the reason given is pretext.).

"[T]he plaintiff may rely on evidence offered to establish his prima facie case to carry his burden of proving pretext." *Gibson*, 308 N.C. at 139, 301 S.E.2d at 84. Some of the factors helpful in determining whether the employer's stated reasons were pretext are:

(1) Evidence that white employees involved in acts against the employer of comparable seriousness were retained or rehired,

**CORBETT v. N.C. DIV. OF MOTOR VEHICLES**

[190 N.C. App. 113 (2008)]

(2) Evidence of the employer's treatment of the employee during his term of employment,

(3) Evidence of the employer's response to the employee's legitimate civil rights activities, and

(4) Evidence of the employer's general policy and practice with respect to minority employees.

*Id.* at 139-40, 301 S.E.2d at 84. The focus is whether the employer's decision was motivated by race. *Id.* To prove pretext, a petitioner can show he did not deserve the adverse employment action and/or present evidence that the employer's decision was racially motivated. In *Hodge*, the State appealed an award by the State Personnel Commission in favor of Edward Hodge ("Hodge"), a correctional officer, 99 N.C. App. at 604, 394 S.E.2d at 286. Hodge, who is African-American, applied for a vacancy previously held by an African-American. *Id.* The prison employment commission recommended a Caucasian employee for the promotion. *Id.* This Court concluded that the State Personnel Commission "had a 'rational basis in the evidence' for deciding that the State's decision was pretextual" given that the DOC was sensitive to criticisms that an African-American would be promoted and the DOC's disregard for Hodge's qualifications for the promotion. *Id.* at 613, 394 S.E.2d at 291.

In the instant case, we conclude there was substantial evidence to support the ALJ's conclusion that the Hatch Act was a pretext for discrimination. Evidence was presented that the Hatch Act was disproportionately applied to NCDMV's African-American employees. Sealey, like Smith, was not subject to the Hatch Act, however he received a directive to resign or withdraw from the campaign, while Smith, a Caucasian employee, did not. This evidence of unequal treatment of an African-American employee compared to a Caucasian employee supports the ALJ's conclusion that "[p]etitioner met his ultimate burden in establishing . . . that his resignation was the result of racial discrimination."

## C. Findings of Fact

NCDMV next argues that the superior court erred in finding that certain findings of fact and conclusions of law made by the SPC were not supported by the record. Even where there is some evidence to support the SPC's findings, this alone is not grounds for reversal. The superior court is under no obligation to adopt the findings of the SPC. N.C. Gen. Stat. § 150B-51(c). Since there is substantial evidence to

support the ALJ's findings, and those findings support the ALJ's conclusions of law, the superior court's order adopting the ALJ's decision should be affirmed. *Ramsey*, 184 N.C. App. at 717, 647 S.E.2d at 127. "Establishing the probative value of evidence is a determination best made by the administrative body." *Enoch v. Alamance Cty. DSS*, 164 N.C. App. 233, 245, 595 S.E.2d 744, 753 (2004) (citation omitted). This assignment of error is overruled.

IV. Conclusion

The superior court correctly applied the standard of review required by N.C. Gen. Stat. § 150B-51(c) in determining that the ALJ's findings and conclusions are supported by the record. Therefore, we affirm the order.

Affirmed.

Judges WYNN and McGEE concur.